[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10325
_____

D.C. Docket No.  1:08-cv-03490-SCJ


PREMIER ASSOCIATES, INC.,

Plaintiff-Counter
Defendant-Appellant,

versus


EXL POLYMERS, INC.,
f,k,a, Nycore Inc.,
NY-CORE, INC.,
a Georgia Corporation,
SHAW INDUSTRIES GROUP, INC.,
a Georgia Corporation,

Defendants-Counter
Claimants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 5, 2013)

Before JORDAN and KRAVITCH, Circuit Judges, and ALBRITTON,[*] District Judge.

ALBRITTON, District Judge:

We have had the benefit of oral argument, and have carefully studied the briefs and relevant parts of the record. We conclude that the judgment of the district court should be affirmed.

Because the relevant facts were set forth in the district court's Opinion and Order, and discussed fully at oral argument, we need not repeat them all here, but merely summarize those facts.

Appellant Premier Associates, Inc. ("Premier") is a real estate holding company which owns property at 25 Mendel Drive in Atlanta, Georgia ("the Mendel site"). In April 2006, Premier entered into a seven-year lease agreement with Nycore, Inc. ("Nycore").[1] Nycore leased the Mendel site for the purpose of manufacturing building materials from recycled carpet waste, known as carpet selvedge.

Appellee Shaw Industries Group, Inc. ("Shaw") is a carpet manufacturer in

---

[*] Honorable W. Harold Albritton, United States District Judge for the Middle District of Alabama, sitting by designation.

[1] Default Judgment was entered against Defendant EXL Polymers, Inc. f/k/a Nycore, Inc. and Ny-Core, Inc. on January 3, 2012.

Dalton, Georgia.  In May 2006, Shaw began shipping carpet selvedge to Nycore at the Mendel site for recycling.   Shaw had previously shipped carpet selvedge to a predecessor company of Nycore in Minnesota.   The carpet selvedge was processed into other products at the Minnesota facility.  The carpet selvedge at the Mendel site ultimately was not recycled but instead was stored on site.  Shaw stopped shipment of the carpet selvedge when it discovered that the material was not being recycled.

Premier sought to hold Shaw and other defendants liable for property losses at the Mendel site under the federal Resource Conservation and Recovery Act ("RCRA") and related Georgia state law.   The district court granted Shaw's motion for summary judgment and denied Premier's.  Premier appeals from those rulings.

We review a district court's grant or denial of a motion for summary judgment *de novo*.  *Harris v. Bd. of Educ. of Atlanta,* 105 F.3d 591, 595 (11th Cir. 1997).  We review all inferences reasonably drawn from the evidence in a light most favorable to the nonmovant.   *Perry v. Sec'y Fla. Dep't of Corr.*, 664 F.3d 1359, 1363 (11th Cir. 2011).

"The RCRA is a comprehensive environmental statute that establishes a cradle-to-grave system for regulating the disposal of solid and hazardous waste."

3

*Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1010 (11th Cir. 2004). The RCRA allows approved states to implement and enforce its provisions. 42 U.S.C. § 6926(b). In 1979, Georgia received approval and enacted the Hazardous Waste Management Act ("HWMA"), Ga. Code Ann. §§ 12-8-60 through 12-8-83, and the Comprehensive Solid Waste Management Act ("SWMA"), Ga. Code Ann. §§ 12-8-20 through 12-8-59.2, to regulate solid and hazardous waste. *Parker*, 386 F.3d at 1010. The definition of solid waste under Georgia law is as follows:

> "Solid waste" means any garbage or refuse; sludge from a waste-water treatment plant, water supply treatment plant, or air pollution control facility; and other discarded material including solid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations and community activities, but does not include recovered materials . . . .

Ga. Code Ann. § 12-8-22 (33). As indicated, "recovered materials" are excluded from the definition of "solid waste" under Georgia law. Ga. Code Ann. § 12-8-22 (33)*; see also Parker*, 386 F.3d at 1011. "Recovered materials" means those materials which have known use, reuse, or recycling potential; can be feasibly used, reused, or recycled; and have been diverted or removed from the solid waste stream for sale, use, reuse, or recycling, whether or not requiring subsequent separation and processing. Ga. Code Ann. § 12-8-22(25). "Recovered materials" is a term further defined to exclude materials accumulated speculatively. Ga.

4

Comp. R. & Regs. 391-3-4-.04(7)(b).   To prove that a recovered material is not accumulated speculatively, "the person accumulating it can show that there is a known use, reuse, or recycling potential for the material, that the material can be feasibly sold, used, reused, or recycled and that during the preceding 90 days the amount of material that is recycled, sold, used, or reused equals at least 60 percent by weight or volume of the material received during that 90-day period and 60 percent by weight or volume of all material previously received and not recycled, sold, used, or reused and carried forward into that 90-day period."  Ga. Comp. R. & Regs. 391–3–4–.04(7)(c).

Premier contends that under Georgia law, the carpet selvedge in this case is not a recovered material because it does not have a known use, reuse, or recycling potential; could not be feasibly used, reused, or recycled; and was not diverted or removed from the stream of solid waste.  Premier also contends that even if the carpet selvedge was properly characterized as a recovered material at some point, Shaw has failed to prove that it was not accumulated speculatively.

With respect to the known use, reuse, or recycling potential of carpet selvedge, there is undisputed expert deposition testimony of Charles MacPherson that carpet selvedge can be processed into other products such as boards, park benches, and fiber linings for coats.  Premier contends, however, that Shaw's

5

carpet selvedge could not be feasibly used, reused, or recycled because the only feasible outcome for Shaw's carpet waste was that it would remain on Premier's property to deteriorate.

Premier points to facts that there was never any manufacturing equipment at the Mendel site, that carpet selvedge was not processed there, that Shaw did not know if Nycore manufactured at the site, and that Shaw believed Nycore was temporarily storing carpet at the site. Premier contends that if those facts were viewed in a light most favorable to it, the carpet selvedge recycling was not feasible at the Mendel site.

The record evidence establishes that Shaw began shipping carpet selvedge to Nycore's predecessor in Minnesota in 2001. The record evidence also indicates that representatives from Shaw visited the Minnesota facility in June of 2002 to tour the facility, and that extruders were being used to process carpet selvedge. Therefore, the undisputed facts show that at the time Shaw began shipping carpet selvedge to the Mendel facility, it and Nycore had a business association pursuant to which carpet selvedge was being processed at a Minnesota recycling facility. The shipments of carpet selvedge to the Mendel site were made for recycling of Shaw's carpet selvedge at that facility. Furthermore, there is affirmative evidence in the record, as to which Premier fails to create a genuine

6

issue of fact, that Shaw stopped its shipments once it learned that the carpet selvedge was not being recycled by Nycore at the Mendel site. Therefore, there is no genuine dispute of fact so as to preclude summary judgment, and the carpet selvedge in this case had a known use, resue, or recycling potential and could be feasibly used, reused, or recycled.

As stated earlier, Premier also argues that Shaw has not shown that the carpet selvedge was diverted or removed from the solid waste stream, because the carpet selvedge was not recycled and was not sold. Under the plain language of the statute, however, the carpet selvedge was "diverted or removed from the solid waste stream for sale, use, reuse, or recycling," Ga. Code Ann. § 12-8-22(25), because the undisputed record evidence is that the carpet selvedge was taken to the Mendel site for recycling instead of being taken to a landfill. The fact that selvedge was not recycled does not prevent it from qualifying as a recovered material.

Premier further contends that, even if the carpet selvedge is "recovered material" within the meaning of Georgia law, it was accumulated speculatively because Shaw cannot demonstrate that 60 percent of the material received was recycled, as required by Georgia law. *See* Ga. Comp. R. & Regs. 391-3-4-.04(7)(b).

7

Under Georgia regulations, if materials that would otherwise qualify as "recovered materials" are "accumulated speculatively," those materials are considered solid waste. *Parker*, 386 F.3d at 1010-12. To show that recovered material is not accumulated speculatively," the "person accumulating it" can make the showing that 60 percent of the "material received" is recycled. Ga. Comp. R. & Regs. 391-3-4-.04(7)(c). In this case, the undisputed record evidence reflects that Nycore, not Shaw, was the "person accumulating" the carpet selvedge, and the party who "received" the material, so that Nycore is the party to whom the regulatory speculative accumulation provisions are directed, not Shaw. In other words, Shaw was not accumulating the selvedge, so does not have a statutory duty to prove that the selvedge was not accumulated speculatively.

We conclude that the carpet selvedge provided by Shaw is a recovered material, and was not solid waste under the RCRA.

The conclusion that, under the facts of this case, the carpet selvedge in question is not solid waste also defeats Premier's imminent and substantial endangerment claim under 42 U.S.C. § 6972(a)(1)(B). The statute requires a showing of three elements: that the defendant (1) is a person, (2) who contributed or is contributing to solid waste handling, storage, treatment, transportation, or disposal, and (3) the waste may present an imminent and substantial endangerment

8

to health or the environment.  *Parker*, 386 F.3d at 1014.   In this case, as stated, the second element has not been established.  *Id.* (applying analysis of "solid waste" as defined by Georgia law to 42 U.S.C. § 6972(a)(1)(B) claim).

Similarly, the grant of summary judgment on the negligence, negligence per se, and nuisance state law claims was proper, there being no showing of a basis for a duty outside of the provisions of the RCRA and Georgia statutory and regulatory law relied on by Premier, which were not violated in this case.  Furthermore, to the extent the nuisance claim was based on something other than a duty, the district court correctly rejected the contention that Shaw had improperly disposed of the waste.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.